**MILSTEIN ADELMAN JACKSON
FAIRCHILD & WADE, LLP**
Gillian L. Wade, Esq. (SBN 229124)
gwade@majfw.com
Sara D. Avila, Esq. (SBN 263213)
savila@majfw.com
10250 Constellation Blvd., Suite 1400
Los Angeles, CA 90067
Telephone:   (310) 396-9600
Facsimile:   (310) 396-9635

**CARNEY BATES & PULLIAM, PLLC**
Randall K. Pulliam, Esq.
rpulliam@cbplaw.com
2800 Cantrell Rd., Suite 510
Little Rock, Arkansas 72202
Telephone:   (501) 312-8500
Facsimile:   (501) 312-8505

*Attorneys for Plaintiff ARCARE d/b/a
Parkin Drug Store*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARCARE d/b/a PARKIN DRUG STORE, on behalf of itself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> QIAGEN NORTH AMERICAN HOLDINGS, INC., <br><br> Defendant | Case No. 2:16-cv-7638 <br><br> **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** <br><br> 1. Violations of the Telephone Consumer Protection Act, *47 U.S.C. § 227(b)(1)(C) and 47 C.F.R. § 64.1200(a)(4)* <br> 2. Violations of the California Junk Fax Law, *Cal. Bus. and Prof. Code § 17538.43* |

**CLASS ACTION COMPLAINT**

# CLASS ACTION COMPLAINT

Plaintiff ARcare, Inc. ("Plaintiff"), on behalf of itself and all others similarly situated, brings this Complaint against Qiagen North American Holdings, Inc. ("Defendant") for violations of the federal Telephone Consumer Protection Act and the California Junk Fax Law, Cal. Bus. and Prof. Code Section 17538.43 "California Junk Fax Law"). Plaintiff seeks certification of its claims against Defendant as a class action. In support, Plaintiff states as follows:

## INTRODUCTION

1. This case challenges Defendant's policy and practice of faxing unsolicited advertisements without providing an opt-out notice as required by law.

2. Congress enacted the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, to regulate the fast-growing expansion of the telemarking industry. As is pertinent here, the TCPA and its implementing regulations prohibit persons within the United States from sending advertisements via fax without including a detailed notice that allows recipients to expeditiously opt out of receiving future solicitations.

3. Junk faxes disrupt recipients' peace, drain recipients' paper, ink, and toner, and cause recipients tangible damages. Junk faxes also cause recipients to waste valuable time retrieving and discerning the purpose of the faxes; prevent fax machines from receiving and sending authorized faxes; and cause undue wear and tear on recipients' fax machines. Plaintiff offers pharmaceutical services and must use its fax machine to receive communications about patients. That purpose is impeded when Plaintiff's fax machine is invaded by junk faxes.

4. The TCPA provides a private right of action and statutory damages of $500 per violation, which may be trebled when the violation is willing or knowing.

5. The California Junk Fax Law provides a private right of action and statutory damages of Actual damages or statutory damages of five hundred dollars

($500) per violation, whichever amount is greater, which may be trebled when the violation is willing or knowing.

6. On behalf of itself and all others similarly situated, Plaintiff brings this case under the TCPA to recover declaratory relief, damages for violations of the TCPA, and an injunction prohibiting Defendant from future TCPA violations.

## JURISDICTION AND VENUE

7. This Court has personal jurisdiction over Defendant because it operates its business in California.

8. This Court has subject-matter jurisdiction over Plaintiff's TCPA claim pursuant to 28 U.S.C. § 1331.

9. Venue in this district is proper because this is the district in which Defendant resides.

## PARTIES

10. Plaintiff ARcare is an Arkansas non-profit corporation located in Augusta, Arkansas.

11. Defendant Qiagen North American Holdings, Inc. is a company that develops technologies and products for separating and purifying nucleic acids and for sampling and assaying procedures. It has its principal place of business at 19300 Germantown Road, Germantown, Maryland, 20874, and is organized under the laws of California.

## FACTS

12. On May 31, 2016, Defendant sent an unsolicited advertisement to Plaintiff's ink-and-paper facsimile machine. The fax promotes the availability of Defendant's QuantiFERON –TB Gold product, imploring the recipient to "**save time for both you and your patients by ordering the most accurate test for TB infection, QuantiFERON –TB Gold, from your trusted laboratory partner.**" (emphasis in original). The fax invites the recipient to contact Defendant for further information about the product: "Should you have any additional questions

or comments about QuantiFERON –TB Gold, please feel free to contact us at QFTinfo@qiagen.com." (emphasis in original). A copy of this facsimile is attached hereto and marked as Exhibit A.

13. Exhibit A is exemplary of the junk faxes Defendant sends.

14. Upon information and belief, Plaintiff has received multiple fax advertisements from Defendant similar to Exhibit A.

15. On July 27, 2016, Plaintiff received an additional five faxes from Defendant. These have been attached as Exhibit B.

16. Defendant did not have Plaintiff's prior express invitation or permission to send advertisements to Plaintiff's fax machine.

17. Defendant's faxes do not contain opt-out notices that comply with the requirements of the TCPA.

## CLASS ALLEGATIONS

18. In accordance with Fed. R. Civ. P. 23, Plaintiff brings this action on behalf of the following class of persons (the "Class"):

> All persons and entities who held telephone numbers that received one or more telephone facsimile transmissions that (1) promoted the commercial availability or quality of property, goods, or services offered by "Qiagen," and (2) did not (i) provide a toll-free telephone number and facsimile number where the fax recipient may make a request to the sender not to send any future ads nor (ii) inform the fax recipient that the sender's failure to comply within 30 days of such a request is unlawful.

19. Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is proper, as more information is gleaned in discovery.

20. Excluded from the Class are Defendant, any parent, subsidiary, affiliate, or controlled person of Defendant, as well as the officers, directors,

agents, servants, or employees of Defendant and the immediate family members of any such person. Also excluded are any judge who may preside over this case and any attorneys representing Plaintiff or the Class.

21. <u>Numerosity [Fed R. Civ. P. 23(a)(1)]</u>. The Members of the Class are so numerous that joinder is impractical. Upon information and belief, Defendant has sent illegal fax advertisements to hundreds if not thousands of other recipients.

22. <u>Commonality [Fed. R. Civ. P. 23(a)(2)]</u>. Common questions of law and fact apply to the claims of all Class Members and include (but are not limited to) the following:

    (a) Whether Defendant sent faxes advertising the commercial availability of property, goods, or services;

    (b) The manner and method Defendant used to compile or obtain the list of fax numbers to which it sent Exhibit A and other fax advertisements;

    (c) Whether Defendant faxed advertisements without first obtaining the recipient's prior express permission or invitation;

    (d) Whether Defendant's advertisements contained the opt-out notice required by law;

    (e) Whether Defendant sent the fax advertisements knowingly or willfully;

    (f) Whether Defendant violated 47 U.S.C. § 227;

    (g) Whether Plaintiff and the other Class Members are entitled to actual and/or statutory damages;

    (H) Whether the Court should award treble damages; and

    (I) Whether Plaintiff and the other Class Members are entitled to declaratory, injunctive, and/or other equitable relief.

23. <u>Typicality [Fed. R. Civ. P. 23(a)(3)]</u>. Plaintiff's claims are typical of the claims of all Class Members. Plaintiff received an unsolicited fax

advertisement from Defendant during the Class Period. Plaintiff makes the same claims that it makes for the Class Members and seeks the same relief that it seeks for the Class Members. Defendant has acted in the same manner toward Plaintiff and all Class Members.

24. <u>Fair and Adequate Representation [Fed. R. Civ. P. 23(a)(4)]</u>. Plaintiff will fairly and adequately represent and protect the interests of the Class. It is interested in this matter, has no conflicts, and has retained experienced class counsel to represent the Class.

25. <u>Predominance and Superiority [Fed. R. Civ. P. 23(b)(3)]</u>. For the following reasons, common questions of law and fact predominate and a class action is superior to other methods of adjudication:

    a. Proof of Plaintiff's claims will also prove the claims of the Class without the need for separate or individualized proceedings;

    b. Evidence regarding defenses or any exceptions to liability that Defendant may assert will come from Defendant's records and will not require individualized or separate inquiries or proceedings;

    c. Defendant has acted and continues to act pursuant to common policies or practices in the same or similar manner with respect to all Class Members;

    d. The amount likely to be recovered by individual Members of the Class does not support individual litigation. A class action will permit a large number of relatively small claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based on common proofs;

    e. This case is inherently well-suited to class treatment in that:

        i. Defendant identified persons or entities to receive its fax transmissions, and it is believed that Defendant's computer

and business records will enable Plaintiff to readily identify Class Members and establish liability and damages;

ii. Common proof can establish Defendant's liability and the damages owed to Plaintiff and the Class;

iii. Statutory damages are provided for in the statutes and are the same for all Class Members and can be calculated in the same or a similar manner;

iv. A class action will result in an orderly and expeditious administration of claims, and it will foster economies of time, effort, and expense;

v. A class action will contribute to uniformity of decisions concerning Defendant's practices; and

vi. As a practical matter, the claims of the Class are likely to go unaddressed absent class certification.

## **CLAIMS FOR RELIEF**

### COUNT I
**Violations of the Telephone Consumer Protection Act**
*47 U.S.C. § 227(b)(1)(C) and 47 C.F.R. § 64.1200(a)(4)*

26. Plaintiff hereby incorporates by reference each of the preceding paragraphs as though fully set forth herein.

27. The TCPA provides strict liability for sending fax advertisements in a manner that does not comply with the statute. Recipients of fax advertisements have a private right of action to seek an injunction or damages for violations of the TCPA and its implementing regulations. 47 U.S.C. § 227(b)(3).

28. The TCPA makes it unlawful to send any "unsolicited advertisement" via fax unless certain conditions are present. 47 U.S.C. § 227(b)(1)(C). "Unsolicited advertisement" is defined as "any material advertising the commercial

availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

29. Unsolicited faxes are illegal if the sender and recipient do not have an "established business relationship." 47 U.S.C. § 227(b)(1)(C)(i). "Established business relationship" is defined as "a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a business or residential subscriber with or without an exchange of consideration, on the basis of an inquiry, application, purchase or transaction by the business or residential subscriber regarding products or services offered by such person or entity, which relationship has not been previously terminated by either party." 47 U.S.C. § 227(a)(2); 47 C.F.R. § 64.1200(f)(6).

30. Regardless of whether the sender and recipient have an established business relationship, and regardless of whether the fax is unsolicited, a faxed advertisement is illegal unless it includes an opt-out notice on its first page that complies with the TCPA's requirements. *See* 47 U.S.C. § 227(b)(1)(C)(iii); 47 C.F.R. § 64.1200(a)(4)(iv). To comply with the law, an opt-out notice must (1) inform the recipient that the recipient may opt out of receiving future faxes by contacting the sender; (2) provide both a domestic telephone number and a facsimile machine number—one of which must be cost-free—that the recipient may contact to opt out of future faxes; and (3) inform the recipient that the sender's failure to comply with an opt-out request within thirty days is a violation of law. *See* 47 U.S.C. § 227(b)(2)(D); 47 CFR § 64.1200(a)(4)(iii).

31. Defendant faxed unsolicited advertisements to Plaintiff that did not have compliant opt-out notices, in violation of 47 U.S.C. § 227(b)(1)(C) and 47 C.F.R. § 64.1200(a)(4).

32. Defendant knew or should have known (a) that Plaintiff had not given express invitation or permission for Defendant to fax advertisements about its

products; (b) that Defendant's faxes did not contain a compliant opt-out notice; and (c) that Exhibit A is an advertisement.

33. Defendant's actions caused actual damage to Plaintiff and the Class Members. Defendant's junk faxes caused Plaintiff and the Class Members to lose paper, toner, and ink consumed in the printing of Defendant's faxes through Plaintiff's and the Class Members' fax machines. Defendant's faxes cost Plaintiff and the Class Members time that otherwise would have been spent on Plaintiff's and the Class Members' business activities.

34. In addition to statutory damages (and the trebling thereof), Plaintiff and the Class are entitled to declaratory and injunctive relief under the TCPA.

## COUNT II
**Violations of the California Junk Fax Law**
*Cal. Bus. and Prof. Code Section 17538.43*

35. Plaintiff hereby incorporates by reference each of the preceding paragraphs as though fully set forth herein.

36. The California Junk Fax Law states that "Unsolicited advertisement means any material advertising the commercial availability or quality of any property, goods, or services that is transmitted to any person or entity without that person's or entity's prior express invitation or permission."

37. The California Junk Fax Law provides "it is unlawful for a person or entity, if either the person or entity or the recipient is located within California, to use any telephone facsimile machine, computer, or other device to send, or cause another person or entity to use such a device to send, an unsolicited advertisement to a telephone facsimile machine."

38. The California Junk Fax Law makes unlawful to "(1) initiate any communication using a telephone facsimile machine that does not clearly mark, in a margin at the top or bottom of each transmitted page or on the first page of each transmission, the date and time sent, an identification of the business, other entity,

8
**CLASS ACTION COMPLAINT**

or individual sending the message, and the telephone number of the sending machine or of the business, other entity, or individual."

39. Violations of the the California Junk Fax Law include:

    a. (A) Injunctive relief against further violations.

    b. (B) Actual damages or statutory damages of five hundred dollars ($500) per violation, whichever amount is greater.

    c. (C) Both injunctive relief and damages as set forth in subparagraphs (A) and (B).

    d. If the court finds that the defendant willfully or knowingly violated this subdivision, the court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount otherwise available under subparagraph (B).

40. Defendant faxed unsolicited advertisements to Plaintiff that did not have compliant opt-out notices, in violation of Cal. Bus. and Prof. Code §17538.43(b)(1).

41. Defendant knew or should have known (a) that Plaintiff had not given express invitation or permission for Defendant to fax advertisements about its products; (b) that Defendant's faxes did not contain a compliant opt-out notice; and (c) that Exhibit A is an advertisement.

42. Defendant's actions caused actual damage to Plaintiff and the Class Members. Defendant's junk faxes caused Plaintiff and the Class Members to lose paper, toner, and ink consumed in the printing of Defendant's faxes through Plaintiff's and the Class Members' fax machines. Defendant's faxes cost Plaintiff and the Class Members time that otherwise would have been spent on Plaintiff's and the Class Members' business activities.

43. In addition to statutory damages (and the trebling thereof), Plaintiff and the Class are entitled to declaratory and injunctive relief under the California Junk Fax Law.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court:

    a)    Determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure;

    b)    Declare Defendants' conduct to be unlawful under the TCPA and the California Junk Fax Law;

    c)    Award damages under the TCPA for each violation in the amount of actual monetary loss or $500, whichever is greater, and treble those damages;

    d)    Award damages under the California Junk Fax Law for each violation in the amount of actual monetary loss or $500, whichever amount is greater;

    e)    Enjoin Defendants from additional violations;

    f)    Award Plaintiff and the Class their attorney's fees and costs;

    g)    Grant such other legal and equitable relief as the Court may deem appropriate, including costs and attorney's fees.

## JURY DEMAND

Plaintiff and the Members of the Class hereby request a trial by jury.

Dated: October 13, 2016    **MILSTEIN ADELMAN JACKSON FAIRCHILD & WADE, LLP**

By: */s/Gillian L. Wade*
        Gillian L. Wade
        Sara D. Avila

Randall K. Pulliam, Esq.
**CARNEY BATES & PULLIAM, PLLC**

*Attorneys for Plaintiff*

# EXHIBIT A


QIAGEN

Date: May 31, 2016

Dear Provider,

School health forms are about to pile up on your desk. And let's face it - the patients crowding your waiting room would rather be out enjoying summer. **When Tuberculosis (TB) screening is required, save time for both you and your patients by ordering the most accurate test for TB infection, QuantiFERON®-TB Gold, from your trusted laboratory partner.**

The American Academy of Pediatrics' Red Book indicates that an interferon gamma release assay (IGRA) such as QuantiFERON is acceptable in place of the tuberculin skin test (TST) in children ≥2 years of age and preferred over the TST in children 5 years of age and older who are unlikely to return for TST reading or who have a history of BCG vaccination (1).

To learn more and to **access a complimentary continuing education webinar** administered by the National Association of Pediatric Nurse Practitioners (NAPNAP) titled *"Back to School TB Screening: What Practitioners and Families Need to Know,"* please visit http://www.pages02.net/mms-pod2beta/Qiagen_QuantiFERON and complete a short survey.

Should you have any additional questions or comments about QuantiFERON-TB Gold, please feel free to contact us at QFTinfo@qiagen.com.

Sincerely,
Your QFT Team

QuantiFERON®-TB Gold (QFT®) is approved by the FDA as an in vitro diagnostic aid for detection of *Mycobacterium tuberculosis* infection. It uses a peptide cocktail simulating ESAT-6, CFP-10, and TB7.7(p4) proteins to stimulate cells in heparinized whole blood. Detection of IFN-γ by ELISA is used to identify in vitro responses to these peptide antigens that are associated with *M. tuberculosis* infection. QFT is an indirect test for *M. tuberculosis* (including disease) and is intended for use in conjunction with risk assessment, radiography, and other medical and diagnostic evaluations. Up-to-date licensing information and product-specific disclaimers can be found at **www.QuantiFERON.com**.

The performance of the USA format of the QFT test has not been extensively evaluated with specimens from individuals younger than age 17 years.

**References:** 1. American Academy of Pediatrics. *Red Book: 2012 Report of the Committee on Infectious Diseases.* Pickering LK, ed. 29th ed. Elk Grove Village, IL: American Academy of Pediatrics; 2012.

If you no longer wish to receive fax advertisements from QIAGEN, please email QFTinfo@qiagen.com and provide the following information so that we can process your request: your name, the name of your company (if applicable), your fax number(s) and an indication that you do not wish to receive fax advertisements from us.

QIAGEN Inc.
19300 Germantown Road | Germantown, MD 20874 | USA
www.qiagen.com

**EXHIBIT B**



July 27, 2016

Dear Provider,

The current CDC Guidelines on Tuberculosis Testing include recommendations related to the use of interferon-gamma release assays (IGRAs) to aid in the diagnosis of *M. tuberculosis* (1). Key recommendations include:

- An IGRA, such as QuantiFERON®-TB Gold (QuantiFERON), may be used in place of (but not in addition to) a TST in all situations in which CDC recommends tuberculin skin testing as an aid in diagnosing *M. tuberculosis* infection
- Testing with an IGRA such as QuantiFERON **is preferred** over testing with the TST in the following situations:
    - Patient is BCG vaccinated
    - Patient is unlikely to return for TST reading

QuantiFERON is unaffected by prior BCG vaccination, and unlike the TST, QuantiFERON does not cross-react with most other environmental mycobacteria.

Enclosed is a letter from Dr. Masae Kawamura, Senior Director of Medical and Scientific Affairs, that provides additional information on the use of QuantiFERON for your pediatric patients. I would like to speak with you further about the new guidelines and the benefits of testing with QuantiFERON and provide you with the pediatric study references Dr. Kawamura mentions in her letter. Please contact me by phone at +1 (661)-702-3691, or by email at deborah.higby@qiagen.com.

Sincerely,

Deborah Higby
QuantiFERON Product Specialist

QuantiFERON®-TB Gold (QFT®) is approved by the FDA as an in vitro diagnostic aid for detection of *Mycobacterium tuberculosis* infection. It uses a peptide cocktail simulating ESAT-6, CFP-10, and TB7.7(p4) proteins to stimulate cells in heparinized whole blood. Detection of IFN-γ by ELISA is used to identify in vitro responses to these peptide antigens that are associated with *M. tuberculosis* infection. QFT is an indirect test for *M. tuberculosis* (including disease) and is intended for use in conjunction with risk assessment, radiography, and other medical and diagnostic evaluations. Up-to-date licensing information and product-specific disclaimers can be found at **www.QuantiFERON.com**.

**References:** 1. Mazurek, G.H. et al. (2010) Updated guidelines for using interferon gamma release assays to detect *Mycobacterium tuberculosis* infection-United States, 2010. MMWR Recomm. Rep. 59(RR05), 1-25.

If you no longer wish to receive fax advertisements from QIAGEN, please email QFTinfo@qiagen.com and provide the following information so that we can process your request: your name, the name of your company (if applicable), your fax number(s) and an indication that you do not wish to receive fax advertisements from us.



July 27, 2016

Dear Provider,

The current CDC Guidelines on Tuberculosis Testing include recommendations related to the use of interferon-gamma release assays (IGRAs) to aid in the diagnosis of *M. tuberculosis* (1). Key recommendations include:

- An IGRA, such as QuantiFERON®-TB Gold (QuantiFERON), may be used in place of (but not in addition to) a TST in all situations in which CDC recommends tuberculin skin testing as an aid in diagnosing *M. tuberculosis* infection
- Testing with an IGRA such as QuantiFERON **is preferred** over testing with the TST in the following situations:
    - Patient is BCG vaccinated
    - Patient is unlikely to return for TST reading

QuantiFERON is unaffected by prior BCG vaccination, and unlike the TST, QuantiFERON does not cross-react with most other environmental mycobacteria.

Enclosed is a letter from Dr. Masae Kawamura, Senior Director of Medical and Scientific Affairs, that provides additional information on the use of QuantiFERON for your pediatric patients. I would like to speak with you further about the new guidelines and the benefits of testing with QuantiFERON and provide you with the pediatric study references Dr. Kawamura mentions in her letter. Please contact me by phone at +1 (661)-702-3691, or by email at deborah.higby@qiagen.com.

Sincerely, _____

Deborah Higby
QuantiFERON Product Specialist

QuantiFERON®-TB Gold (QFT®) is approved by the FDA as an in vitro diagnostic aid for detection of *Mycobacterium tuberculosis* infection. It uses a peptide cocktail stimulating ESAT-6, CFP-10, and TB7.7(p4) proteins to stimulate cells in heparinized whole blood. Detection of IFN-γ by ELISA is tuberculosis (including disease) and is intended for use in conjunction with risk assessment, radiography, and other medical and diagnostic

**References:** 1. Mazurek, G.H. et al. (2010) Updated guidelines for using interferon gamma release assays to detect *Mycobacterium tuberculosis* infection-United States, 2010. MMWR Recomm. Rep. 59(RR05), 1-25.

If you no longer wish to receive fax advertisements from QIAGEN, please email QFTinfo@qiagen.com and provide the following information so that we can process your request: your name, the name of your company (if applicable), your fax number(s) and an indication that you do not wish to receive fax advertisements from us.



July 27, 2016

Dear Colleague,

The 2015 edition of the Red Book® from the American Academy of Pediatrics (AAP) includes updates related to Tuberculosis screenings (1). Two methods for diagnosing latent TB infection in asymptomatic patients are discussed: the tuberculin skin test (TST) and blood-based interferon gamma release assays (IGRAs). The current IGRA guidelines is based on growing pediatric evidence and have significantly evolved from a very cautious and restrictive approach in 2009 to one that states it is an acceptable test in all ages.

The following guidance on the use of IGRAs in children is provided:

- IGRAs are recommended by the CDC for all indications in which TST would be used
- IGRAs are the preferred tests for TB infection in asymptomatic children 5 years and older who have been vaccinated with BCG or a unlikely to return for skin test reading
- Efficacy of IGRAs in children has consistently been demonstrated in children 5 years and older, and some data supports the use of IGRAs for children as young as 3 years
- Until sufficient evidence is available, the TST is preferred (although IGRA is acceptable) in children under age 5

To access the new edition of the Red Book, visit www.redbook.solutions.aap.org.

Since the release of the 2014 AAP Technical Report (2), evidence continues to grow, demonstrating strong performance of IGRAs in children of all ages, including children under age 5. If your pediatric patient has risk factors indicating the need for a TB test, consider ordering the blood test, QuantiFERON®-TB Gold (QFT®), as your first choice from your trusted laboratory partner. QFT yields significantly more accurate results than the skin test, does not cross-react with the BCG vaccination and does not require a return visit to get a result. Contact your local QFT representative for more information.

Sincerely,

*L. Masae Kawamura, MD*

L. Masae Kawamura, M.D.
Senior Director, Medical and Scientific Affairs

QuantiFERON®-TB Gold (QFT®) is approved by the FDA as an in vitro diagnostic aid for detection of *Mycobacterium tuberculosis* infection. It uses a peptide cocktail simulating ESAT-6, CFP-10, and TB7.7(p4) proteins to stimulate cells in heparinized whole blood. Detection of IFN-γ by ELISA is used to identify in vitro responses to these peptide antigens that are associated with *M. tuberculosis* infection. QFT is an indirect test for *M. tuberculosis* (including disease) and is intended for use in conjunction with risk assessment, radiography, and other medical and diagnostic evaluations. Up-to-date licensing information and product-specific disclaimers can be found at **www.QuantiFERON.com**.

**References:** 1. American Academy of Pediatrics. Tuberculosis. In: Kimberlin DW, Brady MT, Jackson MA, Long SS, eds. Red Book®: 2015 REPORT OF THE COMMITTEE ON INFECTIOUS DISEASES. American Academy of Pediatrics; 2015; 805-831. 2. Starke et al. AAP TECHNICAL REPORT Interferon-γ Release Assays for Diagnosis of Tuberculosis Infection and Disease in Children. Pediatrics. Volume 134, Number 6, December 2014.

**QIAGEN**

July 27, 2016

Dear Provider,

The current CDC Guidelines on Tuberculosis Testing include recommendations related to the use of interferon-gamma release assays (IGRAs) to aid in the diagnosis of *M. tuberculosis* (1). Key recommendations include:

- An IGRA, such as QuantiFERON®-TB Gold (QuantiFERON), may be used in place of (but not in addition to) a TST in all situations in which CDC recommends tuberculin skin testing as an aid in diagnosing *M. tuberculosis* infection
- Testing with an IGRA such as QuantiFERON **is preferred** over testing with the TST in the following situations:
    - Patient is BCG vaccinated
    - Patient is unlikely to return for TST reading

QuantiFERON is unaffected by prior BCG vaccination, and unlike the TST, QuantiFERON does not cross-react with most other environmental mycobacteria.

Enclosed is a letter from Dr. Masae Kawamura, Senior Director of Medical and Scientific Affairs, that provides additional information on the use of QuantiFERON for your pediatric patients. I would like to speak with you further about the new guidelines and the benefits of testing with QuantiFERON and provide you with the pediatric study references Dr. Kawamura mentions in her letter. Please contact me by phone at +1 (661)-702-3691, or by email at deborah.higby@qiagen.com.

Sincerely,

Deborah Higby
QuantiFERON Product Specialist

QuantiFERON®-TB Gold (QFT®) is approved by the FDA as an in vitro diagnostic aid for detection of *Mycobacterium tuberculosis* infection. It uses a peptide cocktail simulating ESAT-6, CFP-10, and TB7.7(p4) proteins to stimulate cells in heparinized whole blood. Detection of IFN-γ by ELISA is used to identify in vitro responses to these peptide antigens that are associated with *M. tuberculosis* infection. QFT is an indirect test for *M. tuberculosis* (including disease) and is intended for use in conjunction with risk assessment, radiography, and other medical and diagnostic evaluations. Up-to-date licensing information and product-specific disclaimers can be found at **www.QuantiFERON.com**.

**References:** 1. Mazurek, G.H. et al. (2010) Updated guidelines for using interferon gamma release assays to detect *Mycobacterium tuberculosis* infection-United States, 2010. MMWR Recomm. Rep. 59(RR05), 1-25.

If you no longer wish to receive fax advertisements from QIAGEN, please email QFTinfo@qiagen.com and provide the following information so that we can process your request: your name, the name of your company (if applicable), your fax number(s) and an indication that you do not wish to receive fax advertisements from us.



July 27, 2016

Dear Colleague,

The 2015 edition of the Red Book® from the American Academy of Pediatrics (AAP) includes updates related to Tuberculosis screenings (1). Two methods for diagnosing latent TB infection in asymptomatic patients are discussed: the tuberculin skin test (TST) and blood-based interferon gamma release assays (IGRAs). The current IGRA guidelines is based on growing pediatric evidence and have significantly evolved from a very cautious and restrictive approach in 2009 to one that states it is an acceptable test in all ages.

The following guidance on the use of IGRAs in children is provided:

- IGRAs are recommended by the CDC for all indications in which TST would be used
- IGRAs are the preferred tests for TB infection in asymptomatic children 5 years and older who have been vaccinated with BCG or a unlikely to return for skin test reading
- Efficacy of IGRAs in children has consistently been demonstrated in children 5 years and older, and some data supports the use of IGRAs for children as young as 3 years
- Until sufficient evidence is available, the TST is preferred (although IGRA is acceptable) in children under age 5

To access the new edition of the Red Book, visit www.redbook.solutions.aap.org.

Since the release of the 2014 AAP Technical Report (2), evidence continues to grow, demonstrating strong performance of IGRAs in children of all ages, including children under age 5. If your pediatric patient has risk factors indicating the need for a TB test, consider ordering the blood test, QuantiFERON®-TB Gold (QFT®), as your first choice from your trusted laboratory partner. QFT yields significantly more accurate results than the skin test, does not cross-react with the BCG vaccination and does not require a return visit to get a result. Contact your local QFT representative for more information.

Sincerely,

*L. Masae Kawamura, MD*

L. Masae Kawamura, M.D.
Senior Director, Medical and Scientific Affairs

QuantiFERON®-TB Gold (QFT®) is approved by the FDA as an in vitro diagnostic aid for detection of *Mycobacterium tuberculosis* infection. It uses a peptide cocktail simulating ESAT-6, CFP-10, and TB7.7(p4) proteins to stimulate cells in heparinized whole blood. Detection of IFN-γ by ELISA is used to identify in vitro responses to these peptide antigens that are associated with *M. tuberculosis* infection. QFT is an indirect test for *M. tuberculosis* (including disease) and is intended for use in conjunction with risk assessment, radiography, and other medical and diagnostic evaluations. Up-to-date licensing information and product-specific disclaimers can be found at **www.QuantiFERON.com**.

**References:** 1. American Academy of Pediatrics. Tuberculosis. In: Kimberlin DW, Brady MT, Jackson MA, Long SS, eds. Red Book®: 2015 REPORT OF THE COMMITTEE ON INFECTIOUS DISEASES. American Academy of Pediatrics; 2015; 805-831. 2. Starke et al. AAP TECHNICAL REPORT Interferon-γ Release Assays for Diagnosis of Tuberculosis Infection and Disease in Children. Pediatrics. Volume 134, Number 6, December 2014.